IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSHUA GRAY ANDERSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:22-cv-421 (LMB/JFA) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Pending before the Court is the United States of America's Motion to Dismiss pro se plaintiff, Joshua Anderson's Complaint Under Federal Tort Claims Act for lack of jurisdiction and failure to state a claim. [Dkt. No. 12]. Plaintiff, Joshua Anderson ("Anderson" or "plaintiff"), who is currently incarcerated at the Federal Correctional Institution in Elkton, Ohio ("FCI Elkton") filed this action based on his time while incarcerated at the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg"), [Dkt. No. 1] at ¶ 3, 5. While at FCC Petersburg, plaintiff "received an incident report" for "Possession of a Hazardous Tool," for which he was sanctioned. Along with other sanctions instituted by the Bureau of Prison's ("BOP") Disciplinary Hearing Officer ("DHO"), FCC Petersburg's Warden limited the available balance in plaintiff's inmate account to six dollars per month. [Dkt. No. 1] at ¶ 6–7. This encumbrance was lifted when plaintiff moved to FCI Elkton; however, plaintiff filed this civil action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), based on its imposition, alleging that the Warden's actions violated the BOP's duties under 18 U.S.C. § 4042(a), were an abuse of process, and constituted intentional infliction of emotional distress. [Dkt. No. 1] at ¶ 4, 7. Because the Warden's decision to encumber plaintiff's funds meets the

discretionary function exception to the FTCA, the defendant has sovereign immunity, and the Court has no jurisdiction over plaintiff's claims. For this reason, the United States' Motion to Dismiss will be granted.

## I. BACKGROUND

Plaintiff is currently serving a thirty (30) year sentence after pleading guilty before a military judge to, among other charges, rape of a child, possession of child pornography, and distribution of child pornography. United States v. Anderson, 2013 WL 3242397, at *1 (N-M. Ct. Crim. App. June 27, 2013). On August 13, 2020, while incarcerated at FCC Petersburg, plaintiff was charged with violating BOP regulations after correctional staff found a USB drive hidden in a saltshaker in plaintiff's cell. [Dkt. No. 1] at ¶ 6; [Dkt. No. 1-1] at 8. On August 26, 2020, plaintiff pled guilty to the charge of Possession of a Hazardous Tool—which qualifies as a "Greatest Severity" level offense. [Dkt. No. 1] at ¶ 6; Program Statement 5270.09 ("Discipline Program"), 45 tbl.1.[1] As a result, he received the following sanctions from the DHO: ten days of disciplinary segregation, loss of forty-one (41) good conduct days, loss of telephone privileges for sixty (60) days, and loss of commissary privileges for four months. [Dkt. No. 1] at ¶ 6–7. On September 16, 2020, the Warden placed an "investigation hold" on plaintiff's inmate "trust fund" account. Id. at ¶ 7. This hold reduced plaintiff's available inmate account balance to only six dollars per month. Id.; [Dkt. No. 1-1] at 29. When initially imposed, the encumbrance was

---

[1] Although the entirety of the BOP Program Statement addressing the Inmate Discipline Program was not attached to the Complaint, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment" in evaluating a motion to dismiss brought under Fed. R. Civ. P. 12(b)(1), as long as the "jurisdictional facts are [not] inextricably intertwined with those central to the merits." In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333–34 (4th Cir. 2014) (internal quotation marks omitted). It is also proper to take judicial notice of documents in the public record. Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

intended to last until Anderson was released in 2035, but it was removed when he was transferred to FCI Elkton on March 2, 2021, meaning the encumbrance was in effect for less than five months. [Dkt. No. 1] at ¶ 7. The Warden implemented this encumbrance pursuant to the BOP Program Statement 4500.12 ("Trust Fund Policy"), which grants a warden discretion to restrict inmates' access to Trust Fund services, including inmate accounts. [Dkt. No. 1-1] at 25; [Dkt. No. 21-1] at 1.

The restriction of six dollars per month on plaintiff's account is significant because BOP inmates are considered "inmates without funds"—or "indigent"—if they have not had a balance of six dollars or more within the past thirty days. [Dkt. No. 1-1] at 29 (containing a copy of 28 C.F.R. § 549.31). Indigent inmates are entitled to receive two free over the counter ("OTC") medications per week. Id. The six dollar limit on plaintiff's account balance therefore kept him just above the level for indigent status, forcing him to purchase OTC medication using funds from his own account. The Complaint alleges plaintiff was particularly burdened by this limitation because he was unable to purchase the OTC hemorrhoid cream he must use daily.[2] [Dkt. No. 1] at ¶ 27. Although the cost of the cream was under six dollars, the Complaint alleges that after Anderson purchased soap and toothpaste, he no longer had sufficient funds to purchase the cream. Id.; [Dkt. No. 1-1] at 31. Plaintiff requested the cream from Health Services, which declined to provide it to him because he was not "indigent" under the policy. [Dkt. No. 1] at ¶ 29. The lack of hemorrhoid cream caused Anderson extreme physical pain, which the

---

[2] The Complaint and supporting materials also suggest that, through the encumbrance, the Warden restricted plaintiff's ability to call individuals outside of the prison, and to use the commissary more generally; however, how these restrictions follow directly from the encumbrance is unclear. See [Dkt. No. 1] at ¶ 45; [Dkt. No. 1-1] at 4.

3

Complaint describes as "painful burning, itching, discomfort, bleeding, and bowel movements," resulting in emotional distress. Id. at ¶ 30.

On April 10, 2021, plaintiff filed an administrative claim with the BOP, seeking $250,000 in damages, but his claim was denied. [Dkt. No. 1-1] at 1, 7. Having exhausted his administrative remedies, the plaintiff filed the pending Complaint, alleging three claims under the FTCA: (1) "breach of duty" of care, construed by defendant as a negligence claim, (2) abuse of process, and (3) intentional infliction of emotional distress. Plaintiff does not request a specific amount of damages in this civil action, but requests "damages in a sum determined by the trier of fact." [Dkt. No. 1] at 13. The defendant filed its Motion to Dismiss, with a proper Roseboro notice, [Dkt. No. 11], and plaintiff has filed an opposition to it, [Dkt. No. 16]. Finding that oral argument will not further the decisional process, defendant's Motion to Dismiss will be granted based on the parties' papers.

## II. DISCUSSION

Defendant has moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction over plaintiff's claims. Under Rule 12(b)(1), "a civil action must be dismissed whenever the court lacks subject matter jurisdiction." Al Shimari v. CACI Premier Tech., Inc., 320 F. Supp. 3d 781, 782 (E.D. Va. 2018). "When a Rule 12(b)(1) challenge is raised, the burden of proving subject matter jurisdiction is on the plaintiff." Ortiz v. Mayorkas, 2022 WL 595147, at *2 (4th Cir. Feb. 28, 2022) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

In the alternative, defendant moves to dismiss plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), which requires a court to dismiss a claim if the "plaintiff's allegations fail to state a claim upon which relief can be granted." Abdelhamid v. Sec'y of the Navy, 525 F. Supp. 3d

4

671, 681 (E.D. Va. 2021) (quoting Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017)). To survive a motion to dismiss brought under Rule 12(b)(6), a complaint cannot rely on wholly speculative allegations, and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the Fourth Circuit has instructed courts to "construe allegations in a [pro se] complaint liberally," even a pro se plaintiff's complaint "must contain 'enough facts to state a claim for relief that is plausible on its face.'" Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (quoting King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016)).

The United States generally enjoys sovereign immunity from suit, but—subject to certain exceptions—the FTCA waives this immunity for tort claims that encompass "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). One such exception to the FTCA applies to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. at § 2680(a). The discretionary function exception is intended "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Varig Airlines, 467 U.S. 797, 814 (1984).

The Fourth Circuit has found that this discretionary function exception applies (1) when the act or omission "involves an element of judgment or choice" and (2) when this "judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy." Rich v. United States, 811 F.3d 140, 144 (4th Cir. 2015) (citing United States v. Gaubert, 499 U.S. 315, 322–23 (1991)). As to the first prong, if "a federal statute, regulation,

or policy specifically prescribes a course of action for an employee to follow," then the action taken does not "involve an element of judgment or choice" because "the employee has no rightful option but to adhere to the directive." United States v. Gaubert, 499 U.S. 315, 322 (1991); Rich, 811 F.3d at 144. By contrast, when a statute, regulation or otherwise established government policy explicitly grants discretion to an employee, courts must presume that the individual acts pursuant to considerations of public policy. Id. at 324–25.

Here, as defendant correctly argues, the encumbrance placed on plaintiff's account by the Warden was pursuant to the express discretionary authority granted to the Warden by the Trust Fund Policy. Trust Fund Policy § 8.8 states that:

> Encumbrance of inmate funds for various reasons is essential. Careful consideration is given before any action; encumbrances are not made indiscriminately. An encumbrance may be made for various reasons (e.g. to ensure inmates do not seriously deplete their funds before release, disciplinary measures, inmate's request, claims). Encumbrances are at the Warden's discretion or the result of a disciplinary hearing sanction or notification of a pending Federal court order.

Trust Fund Policy § 8.8. The policy also specifies that the "Warden or an authorized representative may limit or deny the privilege of a particular inmate," and that "the maximum amount that may be expended by an inmate for Trust Fund items or services is a controllable privilege." Trust Fund Policy § 2.1(b). On February 3, 2020, the Warden issued a Memorandum for Inmate Population, providing that "the Warden may exercise discretion to encumber funds and limit services for inmates charged with prohibited acts," and stating that "[e]ncumbrances and limitations may consist of . . . [e]ncumber[ing] a monetary account." [Dkt. No. 1-1] at 25. In publishing this facility-wide memorandum, and when encumbering Anderson's account specifically, the Warden explicitly relied on the discretion granted by the Trust Fund Policy. Id.; [Dkt. No. 21-1] at 1. Because the applicable program statement under which the Warden made the decision to encumber plaintiff's funds provides that such decisions are "at the Warden's

discretion," this decision necessarily "involve[d] an element of judgment or choice." See Rich, 811 F.3d (finding that "prison officials exercise broad discretion" in implementing a statute that requires them to "consider several factors and exercise independent judgment in determining whether inmates may require separation"); see also Watson-El v. Wilson, 2011 WL 2941289, at *3 (N.D. Ill. July 21, 2011) (looking at similar language in a prior iteration of the Trust Fund Policy to hold that a warden "had unfettered discretion to freeze a suspicious deposit into the plaintiff's commissary account").

      Plaintiff responds that the Warden had "no room for choice in making the decision whether to encumber Anderson's account" because the Warden "was unauthorized" to encumber it for a disciplinary infraction under the Trust Fund Policy. [Dkt. No. 16] at 5. Plaintiff bases this argument on another Program Statement governing the Inmate Discipline Program, PS 5270.09 ("Discipline Program"), which he claims trumps the Trust Fund Policy in controlling how an inmate's funds can be restricted as a result of a disciplinary infraction. Plaintiff argues that, if the Trust Fund Policy permits a warden to encumber funds in response to disciplinary violations, such an interpretation of the Trust Fund Policy would "swallow the [BOP] disciplinary program whole and render [the Discipline Program] utterly superfluous and meaningless." [Dkt. No. 16] at 21.

      The defendant correctly responds that the two policies do not conflict. The Discipline Program lists a variety of ways that an inmate's privileges may be restricted in response to an infraction, including a loss of commissary privileges until restitution or a fine is paid, and explicitly refers to the Trust Fund Policy "for instructions regarding impoundment of inmate funds." Discipline Program at 16. Moreover, as defendant correctly observes, even though both the Discipline Program and the Trust Fund Policy authorize restriction of inmate's funds, they do

7

so for different purposes. [Dkt. No. 21] at 6. The Discipline Program promotes "the safety, security, and orderly operation of correctional facilities . . . by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts," Discipline Program at 2, while the Trust Fund Policy authorizes encumbrances "for various reasons," including "disciplinary measures." Trust Fund Policy § 8.8. It is clear from a plain reading of the two documents that they operate in tandem and do not conflict. As a result, plaintiff's argument that the Discipline Program supersedes the discretion granted to a warden in the Trust Fund Policy is without merit.[3]

Plaintiff also claims that the text of the Trust Fund Policy denies a warden discretion to encumber funds for a disciplinary infraction. Specifically, he argues that because the policy states that inmate funds can be encumbered either at a warden's discretion or as the result of a disciplinary sanction, an encumbrance cannot be made for both reasons—that is, a warden's discretion cannot be used to encumber funds because of a "disciplinary hearing sanction." [Dkt. No. 16] at 3, 5. But a plain reading of the policy shows that, rather than providing limits to a warden's discretion, these clauses merely list different means through which an inmate's account can be encumbered. See [Dkt. No. 21] at 6. Because nothing identified by plaintiff in the Trust Fund Policy or Discipline Program limits a warden's express discretion to encumber funds and because Warden Andrews operated pursuant to an express grant of discretion from the Trust Fund Policy, his decision "involv[ed] an element of judgment or choice" such that it meets the first prong of the discretionary function exception.

---

[3] Plaintiff's reference to a provision of the Discipline Program which prevents the Warden from "increas[ing] a valid sanction" from the disciplinary process on appeal is similarly unavailing. [Dkt. No. 16] at 25. This provision addresses the role of the Warden as a reviewing official in the appeal of a disciplinary sanction. Discipline Program, 28. Nothing in the Discipline Program indicates that this provision constrains the discretion granted to the Warden in the Trust Fund Policy to encumber inmates' funds.

To satisfy the second prong of the exception, the Warden's decision must be one "that the exception was designed to protect, namely, a judgment based on considerations of public policy."[4] Rich, 811 F.3d at 144. Because the Trust Fund Policy expressly granted the Warden discretion to encumber Anderson's funds, "it must be presumed that the [Warden's] acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324. To overcome this presumption on a motion to dismiss, a complaint

> must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

Id. at 324–25. The plaintiff's burden here is high; he must allege facts to support "that there [were] no considerations of public policy" in the Warden's decision. Blanco Ayala v. United States, 982 F.3d 209, 217 (4th Cir. 2020).

The Complaint's allegation that the Warden acted "with the ulterior motive of harassment" when he imposed the encumbrance does not satisfy plaintiff's burden because the Warden's subjective intent is not relevant. [Dkt. No. 1] at ¶ 19; Gaubert, 499 U.S. at 324. Instead, considering the nature of the actions taken, it is clear that the Warden's decision involved the "purposes that the regulatory regime seeks to accomplish." Gaubert, 499 U.S. at 324. The Fourth Circuit has recognized that it is the mandate of the BOP "to provide for the 'protection,' 'safekeeping,' and 'care' of 'all persons charged with or convicted of offenses against the United States.'" Rich, 811 F.3d at 145 (quoting 18 U.S.C. § 4042(a)(2), (3)). Here,

---

[4] A simplified example of a discretionary decision that would not be grounded in public policy concerns would be if a government official who, in the course of performing his official duties, negligently caused an accident while driving. Even though "driving requires the constant exercise of discretion," this could not be construed as "grounded in regulatory policy." Gaubert, 499 U.S. at 325 n.7.

the Warden explained in a memorandum dated February 3, 2020 that he "may exercise discretion to encumber funds and limit services for inmates charged with prohibited acts, such as but not limited to, weapons, intoxicants, narcotics, and cellular phones." [Dkt. No. 1-1] at 25. The decision to encumber funds of inmates who are charged with prohibited acts is a reasoned policy decision to promote the order and security of the facility, for example as a deterrence mechanism or as a way to restrict access to commissary goods which may be used in furtherance of future infractions.

Although the Fourth Circuit has not explicitly recognized that safety concerns underlie the policy considerations guiding a warden's decision to encumber an inmate's funds, it and other courts have consistently held that other discretionary decisions by wardens implicate concerns of safety and order for prison facilities. See, e.g., Rich, 811 F.3d at 145 (finding "considerations of public policy" including "maintaining order and preserving security" to be "implicated in the discretion given to prison officials in their decisions about the separation of prisoners") (quoting Cohen v. United States, 151 F.3d 1338, 1344 (11th Cir. 1998)); Watson-El v. Wilson, 2011 WL 2941289, at *4 (N.D. Ill. July 21, 2011) (holding a $75.00 encumbrance on an inmate's account after a deposit was made from another inmate's family to implicate "several bona fide policy reasons," including ensuring "the safety and security of the inmates and the institution"); Hale v. Fed. Bureau of Prisons, 759 Fed. Appx. 741, 753 (10th Cir. 2019) (calling it "well-established" that a prison's "no-interview policy" preventing media access to inmates "is reasonably related to legitimate security interests").

Although the Warden's subjective intent is immaterial to the discretionary function exception, plaintiff claims that the amount of the encumbrance was a "farce designed by Warden Andrews to justify not having to provide Anderson with indigent supplies." [Dkt. No. 1] at ¶ 27.

10

But the discretionary function exception immunizes government decisions even when they are negligent and "whether or not the discretion involved be abused."[5] 28 U.S.C. § 2680(a); Blanco Ayala, 982 F.3d at 216 (quoting Wood v. United States, 845 F.3d 123, 128 (4th Cir. 2017)). Even if the Warden's decision to restrict plaintiff's account to six dollars was an abuse of discretion—which this Court does not find it was—it would still be subject to the FTCA's discretionary function exception.

Finally, plaintiff contends that the Warden's decision violates the Eighth Amendment's prohibition on cruel and unusual punishment through disproportionate sentences and is therefore not subject to the discretionary function exception because "[f]ederal officials do not possess discretion to violate constitutional rights or federal statutes." Medina v. United States, 259 F.3d 220, 225 (4th Cir. 2001) (citing United States Fid. & Guar. Co. v. United States, 837 F.2d 116, 120 (3d Cir.1988)); [Dkt. No. 1] at ¶ 44–52. The Warden's decision to encumber plaintiff's account in response to plaintiff committing a "Greatest Severity" level infraction is not a violation of the Eighth Amendment. As defendant cogently argues, the Eighth Amendment's proportionality clause is "narrow" in scope, only prohibiting "extreme sentences that are grossly disproportionate to the crime." United States v. Cobler, 748 F.3d 570, 575 (4th Cir. 2014) (quoting Graham v. Florida, 560 U.S. 48, 59 (2010)). Even assuming that the Warden's encumbrance was a "punishment" within the meaning of the Eighth Amendment, which defendant contests, this spending limit placed on Anderson's account—which lasted for only five

---

[5] Plaintiff's argument that the Warden committed an abuse of process in placing an "investigation" rather than an "administrative" hold on plaintiff's account does not render the discretionary function inapplicable. [Dkt. No. 16] at 10–11. Moreover, the individualized memorandum pursuant to which the Warden issued the encumbrance—which plaintiff erroneously claims "does not exist," [Dkt. No. 16] at 11—specified that this was an "administrative hold." [Dkt. No. 21-1] at 1.

11

months, even though initially imposed indefinitely—was not "grossly disproportionate" to plaintiff's commission of an infraction classified at the most serious level. Cf. Cobler, 748 F.3d at 576–77 (explaining that the United States Supreme Court has found punishments of twenty-five years to life for non-violent property crimes to be not grossly disproportionate).

### III. CONCLUSION

Because the Warden made a discretionary decision grounded in public policy considerations, the discretionary function exception to the FTCA applies. The defendant therefore has sovereign immunity from plaintiff's tort claims, depriving the Court of jurisdiction over plaintiff's claims. For these reasons, defendant's Motion to Dismiss [Dkt. No. 11] will be granted by an Order to be issued with this Memorandum Opinion.

Entered this 20th day of January, 2023.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge